IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA MARTIN, | ) | CASE NO. 1:16 CV 654 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Theresa L. Martin under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Martin who was 46 years old at the time of the administrative hearing,[11] graduated high school and completed one year of college.[12] She is not married and lives alone in an apartment.[13] Martin's past relevant employment experience includes work as a housekeeper, and a data entry clerk.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Martin had the following severe impairments: depression, anxiety, degenerative disc disease

---

[6] ECF # 10.

[7] ECF # 23 (Commissioner's brief); ECF # 16 (Martin's brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 16-1 (Martin's charts).

[9] ECF # 15 (Martin's fact sheet).

[10] ECF # 25.

[11] ECF # 9, Transcript ("Tr.") at 41.

[12] *Id.* at 43.

[13] *Id*. at 42.

[14] *Id.* at 28.

of the lumbar spine with disc spurring, degenerative joint disease, cervical spine; sclerosis, and anterolisthesis and obesity 20 CFR 404.1520(c) and 416.920(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Martin's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations. The claimant must be allowed to alternate between sitting and standing for brief periods every hour, but will remain on task while doing so. The claimant can occasionally push and pull with foot controls; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. The claimant is limited to unskilled work involving simple, routine, repetitive tasks with only simple decision making; no work requiring fast or strict production rate pace and quotas; occasional and superficial interactions with coworkers and the public in a static environment without conflict resolution, arbitration, or negotiation and no more than infrequent changed in work tasks.[16]

Given that residual functional capacity, the ALJ found Martin incapable of performing her past relevant work as a housekeeper and data entry clerk.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[15] *Id*. at 21.

[16] *Id.* at 24.

[17] *Id*. at 28.

determined that a significant number of jobs existed locally and nationally that Martin could perform.[18] The ALJ, therefore, found Martin not under a disability.[19]

**B.  Issues on judicial review**

Martin asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Martin presents the following issues for judicial review:

- Whether the ALJ erred in weighing the opinions of Ms. Martin's treating sources and finding that she retained the residual functional capacity to perform substantial gainful activity.

- Whether the ALJ erred in not including Ms. Martin's need for a cane in the hypothetical posed to the vocational expert.[20]

For the reasons that follow, I conclude that the ALJ's finding of no disability does not have the support of substantial evidence and, therefore, must be reversed and remanded.

## Analysis

**A.  Legal Standards**

*1.  Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[18] *Id.* at 29.

[19] *Id.*

[20] ECF # 16 at 1.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

-8-

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

---

[42] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[55] The Commissioner's *post hoc* arguments on judicial review are immaterial.[56]

**B.     Application of standards**

The ALJ found at Step Two that Martin had severe impairments consisting of degeneration of the lumbar and sacral spine, and depression/anxiety. The ALJ adopted a fairly restrictive RFC that includes limiting her to sedentary work with a sit/ stand option, and imposing mental limitations to simple, repetitive tasks. But the RFC does not mandate the use of a cane, nor does it require a provision for unscheduled breaks or being absent.

Martin here argues that the opinions of her treating physician and treating psychiatrist support the need for her to use a cane. Further, these opinions provide that she will require frequent breaks and often be absent, prevent her from sustaining an 8 hour workday over a 40-hour workweek. The Commissioner, in turn, maintains that the ALJ gave good reasons for discounting the opinions of these two medical sources, and that substantial evidence supports the RFC.

As to the first issue of whether the ALJ properly weighed and evaluated the opinions of the two treating sources, the ALJ gave both opinions "little weight."[57]

---

[55] *Blakley*, 581 F.3d at 407.

[56] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[57] Tr. at 27.

As to the opinion of Dr. Sangnil, Martin's treating physician, the ALJ observed that opinions of treating sources are to be given "controlling or great weight" if they are well supported by medically acceptable evidence and not inconsistent with the other substantial medical evidence.[58] But the ALJ then concluded that Dr. Sangnil's opinion was "based primarily" on Martin's subjective complaints and was "wholly at odds" with the single x-ray in the record, which shows "only some mild to moderate degenerative changes in the lumbar spine," and at odds with the "signs of negative straight leg raise testing" and a "relatively stable gait and station."[59] In addition to these factors, the ALJ also observed that Dr. Sangnil's opinion was based "on two office visits."[60]

In addressing the opinion of Dr. Schweid, the treating psychiatrist, the ALJ similarly found that this opinion was at odds with the evidence showing Martin's ability to live independently and her "numerous GAF scores above 50."[61] The ALJ also observed that "there is no evidence including treatment notes to support marked limitations in functioning as well as 1-2 episodes of decompensation as defined by the agency."[62]

Although the ALJ largely set forth his reasons for discounting these opinions within a single section of the opinion, he also discussed the functional consequences of Martin's

---

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

impairments at some length in an earlier portion of the opinion, where he discussed and weighed the opinions of state agency consulting examiners.[63] Martin properly observes that Dr. Sangnil's treatment notes, as well as records from MetroHealth's pain management clinic, provide some support for Dr. Sangnil's opinion beyond Martin's own complaints,[64] But the Commissioner correctly points out that Dr. Sangnil's records show that Martin's straight leg raising test did not show any objective abnormality and that her trace reflexes were essentially normal.[65] Moreover, the records of the physical therapists at MetroHealth include observations that Martin's motor strength was reduced, while Dr. Sangnil characterized it as full, and further indicated that Martin's back pain left her restricted to bed, or was exaggerated[66] - in both instances being evidence that was inconsistent with Dr. Sangnil's findings.

In sum, while it may be argued that there is substantial evidence in the record to support the giving of greater weight to Dr. Sangnil's opinion, so too substantial evidence exists for the weight ultimately assigned by the ALJ. In such a situation, the reviewing court must affirm the decision of the Commissioner.

As to the weight given to Dr. Schweid, the ALJ specifically cited to multiple GAF scores above 50, which indicate only moderate symptoms that produce no more than

---

[63] *Id*. at 25-27.

[64] ECF # 16 at 18-20 (citing record).

[65] ECF # 23 at 13-14.

[66] *Id*. at 16-17.

moderate difficulties.[67] As the Commissioner states, this element of the record, specifically cited by the ALJ, is in marked contrast to Dr. Schweid's opinion that Martin had "no useful ability to function" in all ten categories of the area of sustained concentration and persistence, four of five categories of social interaction, and all four categories of adaptation.[68]

Significantly, the ALJ also observed that Dr. Schweid's records do not support a finding that Martin had one or more episodes of decompensation as defined in the regulations.[69] Martin has not contested this observation.[70]

Accordingly, as with the opinion of Dr. Sangnil, substantial evidence supports the weight assigned to Dr. Schweid's opinion.

The issue as to the use of a cane is a different matter. Here, the need for a cane is well-documented in the record.[71] The Commissioner presents several arguments on this point: (1) the ALJ could observe Martin's actual balance and gait and this opinion should be deferred to; (2) other records characterized her gait as normal; (3) the advice to use a cane only occurred three weeks before the hearing.[72]

---

[67] *Id*. at 18-19.

[68] *Id*. at 19.

[69] *Id*. at 21.

[70] *Id*. at 21-22.

[71] *See, e.g*., tr. at 366 (Dr. Sangnil); 535-541 (physical therapist).

[72] ECF # 23 at 17.

While the ALJ's observation of the claimant is entitled to deference, the hearing record does not indicate that any sort of walking demonstration took place to show - one way or the other - that Martin needed assistance with walking or balance. Observation of a seated claimant has little bearing on the question of a need for a cane. Further, although gait may well be normal, the matter of maintaining balance, particularly over time, is not necessarily addressed in assessing gait.[73] The use of a cane was not explicitly addressed by the ALJ here.

As Martin points out, SSR 96-9p details circumstances where a hand-held assistive device such as a cane may affect the relevant employment base for sedentary work.[74] Here, the VE was not given a hypothetical where the use of a cane was a factor. Because that factor was not specifically addressed, despite numerous references to a cane in the record, I must remand so that the ALJ may make a finding as to whether a cane is medically necessary or merely helpful, particularly with reference to maintaining balance over an eight-hour workday. Further, if it is medically necessary, the hypothetical to the VE must include that finding.

## Conclusion

Therefore, for the reasons stated, the matter is remanded for further proceedings consistent with this opinion.

---

[73] Unsteadiness on her feet, imbalance and risk of falling are mentioned in the comments addressing the need for a cane. *See*, ECF # 16 at 23 (citing record).

[74] *Id*. at 23-24.

IT IS SO ORDERED.


Dated: September 20, 2017					s/ William H. Baughman, Jr.
								United States Magistrate Judge